## Oil Well Operators

LEON EHRLICH, Deputy Attorney General, and DAVID STAHL, Attorney General, February 28, 1962.— You have requested our interpretation of the provisions of Act No. 225 of 1955, the Act of November 30, 1955, P. L. 756, 52 PS §2101 et seq. In particular you have asked:

"First, does Act No. 225 of 1955 apply to wells that were worked prior to the effective date of the Act of 1955 and not thereafter, to wells started prior to the effective date of that Act and still in operation and to wells that were worked and abandoned prior to the date of the Act of 1955 and where plugging remains to be done.

"Secondly, does the Act of 1955 supersede the provisions and in particular Section 7 of the Act of 1921."

You state that your specific concern is with the interpretation of the statutes pertaining to plugging requirements and procedures.

The purpose of the act as it pertains to plugging is clearly defined in the title:

An Act "Relating to coal mining, well operations and the underground storage of gas, except in storage reservoirs excavated in rock formations specifically for storage purposes, and the safety of personnel and facilities employed therein; prescribing the rights and duties of well operators, before, during, and after the drilling of wells for the production, extraction or storage of any gas, petroleum or other liquid; . . ."

The provisions of Act No. 225 governing plugging are found in sections 205, 206 and 207. (Italics supplied throughout.)

262

Section 205 pertaining to the giving of notice of intention to plug a well provides that:

"Prior to the abandonment of *any well* in an area underlain by a workable coal seam, the well operator shall notify the coal operator and the owner of all known workable coal seams . . . of his intention to plug and abandon any such well . . ."

Section 206 pertaining to the method of plugging a well provides that:

"(a) Upon abandoning or ceasing to operate *any well* in an area not underlain by a workable coal seam, the owner or operator thereof shall plug the same in the following manner . . .

"(b) In an area not underlain by a workable coal seam when it is desired to pull the casing in *any well*, the well may be produced through tubing . . .

"Upon the abandonment of *such well*, a plug or bridge shall be placed in the tubing . . .

"(c) Upon abandoning or ceasing to operate *any well* which passes through a workable coal seam, the owner or operator of said well shall plug the same in the following manner . . .

"(d) Upon abandoning or ceasing to operate *any well* pursuant to this section where any of the strata bearing or having borne oil, gas or water in a well has been shot, thereby creating cavities which cannot be readily filled in the manner above described, the well operator shall use either of the following methods unless he has approval of the division pursuant to an application filed under section 207 to use an alternative method:"

Section 207 merely provides for securing approval of plugging by alternate methods.

As can be seen, the pertinent sections of the act deal with "any well". It would then seem clear that the pro-

visions of the act would apply to wells started prior to the effective date of that act and still in operation since the acts of ceasing to operate or abandoning would occur after the effective date of the act.

Whether the act would apply to wells that were worked prior to the effective date of the Act of 1955, and not thereafter, would depend on whether the well had been abandoned prior to the effective date of the act. If the well had been abandoned, then the provisions of the act would not apply since there was no activity to which the obligations of the act would attach.

Section 205 and 206 also use the language "ceasing to operate". However, the context of the sections seem to indicate that both "abandonment" and "ceasing to operate" are to be considered somewhat close in point of time; in any event both of these conditions are factual situations, to be determined by a study of the status of a particular well, the activity of the operator, and any conduct by him to show an intention not to operate or to abandon. If the well had in fact ceased to operate to a point of abandonment prior to the effective date of the act, then the provisions of the act would not apply; if not abandoned then the obligations set out in sections 205, 206 and 207 would have to be met. We might state that the failure to comply with the provisions of the Act of May 17, 1921, as to plugging might well be considered one factor in determining whether a well had been abandoned. However, whether a well has or has not been abandoned is a question of fact, and the passage of a long period of time without any activity at the well, despite the failure to plug, could indicate abandonment.

The Act of May 17, 1921, P. L. 912, 58 PS §4 et seq., was a general act, covering all oil and gas wells. Sections 1 and 2 of that statute provide methods for plugging abandoned wells and for pulling casing of wells abandoned.

Act No. 225 of 1955, though it is replete with reference to coal seams and appears to have been concerned with the relationship of wells to coal mines, does refer to and provides for plugging of wells in an area not underlain by a workable coal seam.

Section 91 of the Statutory Construction Act of May 28, 1937, P. L. 1019, article VII, 46 PS §591, provides:

"Whenever a law purports to be a revision of all laws upon a particular subject, or sets up a general or exclusive system covering the entire subject matter of a former law and is intended as a substitute for such former law, such law shall be construed to repeal all former laws upon the same subject.

"Whenever a general law purports to establish a uniform and mandatory system covering a class of subjects, such law shall be construed to repeal pre-existing local or special laws on the same class of subjects.

"In all other cases, a later law shall not be construed to repeal an earlier law unless the two laws be irreconcilable."

It is necessary to determine whether Act No. 225 was intended to be a revision of all laws on this particular subject and whether it was intended to set up a general or exclusive system covering this entire subject matter. Reviewing the statute, one is impressed with the fact that a complete regulation seems to have been its objective. There is nothing in the act that specifically limits the applicability of the act, except that section 103 does exclude certain storage reservoirs and section 306 exempts certain mines. Since the legislature specifically excluded certain matters, the failure to exclude others would indicate an intention that everything else be included and covered by the act.

You are therefore advised as follows:

First, Act No. 225 of 1955

(a) would apply to wells started prior to the effective date of that statute and still in operation;

(b) would apply to wells started prior to the effective date of that legislation and not abandoned as of that date;

(c) would not apply to wells abandoned prior to the effective date of that legislation.

Secondly, the Act of May 17, 1921, P. L. 912, is repealed insofar as its provisions are inconsistent with or are covered by provisions of the Act of November 30, 1955, but all portions of it, including section 7, would apply to and could be enforced as to wells not covered by Act No. 225 of 1955, such as wells abandoned prior to the effective date of that statute, but as to which the provisions of the 1921 statute had not been met.